**EMPRESA HONDURENA DE VA-
PORES, S.A., Plaintiff,**

v.

**Ivan C. McLEOD, Regional Director for the Second Region of the National Labor Relations Board, Defendant.**

United States District Court
S. D. New York.
Dec. 16, 1961.

White & Case, New York City, for plaintiff, Orison S. Marden and Chester Bordeau, New York City, of counsel.

Allan I. Mendelsohn, Atty., Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, National Labor Relations Board, 2nd Region, Washington, D. C., Samuel M. Kaynard, Regional Atty., New York City, for defendant.

Cooper, Ostrin & DeVarco, New York City, for Nat. Maritime Union, intervenors, H. Howard Ostrin, New York City, of counsel.

PALMIERI, District Judge.

This is a motion[1] for a preliminary injunction restraining defendant[2] from carrying out an order of the National Labor Relations Board (Board) directing a representation election among the unlicensed seamen employees of Empresa Hondurena de Vapores, S.A. (Empresa). A complaint seeking permanent injunc-

tive relief was filed simultaneously with the motion papers.

The election has been ordered to commence on December 17, 1961, on vessels owned or operated by plaintiff upon their arrival in United States ports and by mailing ballots to employees not aboard vessels scheduled to arrive in the United States between December 17, 1961 and January 31, 1962. Plaintiff is a Honduran corporation, operating vessels registered under the laws of Honduras and carrying the Honduran flag. The unlicensed seamen employed by plaintiff are, with the exception of one who is a citizen of Jamaica, all citizens of Honduras and, with the exception of four, all residents of Honduras. All are also members of a Honduran labor union, Sociedad Nacional de Marineros de Honduras,[3] which is certified by the Ministry of Labor of Honduras. Empresa is, however, a wholly owned subsidiary of United Fruit Company (United Fruit), a New Jersey corporation with its principal place of business at Boston, Massachusetts. Since its formation Empresa has, with few possible exceptions, chartered all its vessels to United Fruit which uses them, for the most part, to carry produce of United Fruit's Latin American operations. It is the plaintiff's position that the Board, in making the order herein question, exceeded its powers under the Labor Management Relations Act of 1947, 29 U.S.C. Chapter 7, inasmuch as this Act has been held by the Supreme

1. The motion was brought by an order to show cause submitted Wednesday and returnable late in the afternoon of the Thursday preceding the Sunday on which the election was scheduled to commence, thus giving adverse parties little time in which to respond and forcing the Court to decide the complex questions of jurisdiction and injunctive relief under pressure of severe time limitations. Considering that the Board issued its order on November 17, 1961, and the plaintiff knew elections were scheduled to commence within 30 days thereof, this long delay in bringing the motion is unfortunate, particularly since the time was found to prepare printed motion papers.

2. Only the Regional Director of the Second Region of the National Labor Relations Board is named as a defendant. It is clear that his responsibilities entail only the mechanics of executing the Board's direction of election. Whether fully effective relief requires the Court's order to reach the Board itself, and whether the members of the Board are indispensable parties to the action, are questions unnecessary to determine, in view of what follows.

3. This Union did not permit its name to be placed on the ballot. Another Honduran union, Sindicato Maritimo Nacional de Honduras, "Sindimar", the National Maritime Union of America, AFL–CIO, and "no union", are the three choices offered by the proposed ballot.

Court of the United States [4] to be inapplicable to labor relations between nationals of foreign countries operating vessels under foreign laws and their foreign workers. The plaintiff urges, in addition, that the Board's direction that the representation election be held, presents a substantial Constitutional question: that such action is in contravention of treaty obligations with the Republic of Honduras and therefore violative of Article VI of the Constitution.[5]

### The Jurisdiction of this Court to Grant the Relief Requested by the Plaintiff

■■ At the very outset, it is necessary to consider the Board's objection that this Court lacks jurisdiction over the subject matter of this action. The objection is based upon the proposition that an employer is not entitled to invoke the jurisdiction of a federal district court to review the Board's direction of a representation election because an adequate and exclusive statutory method of obtaining judicial review by the appropriate Court of Appeals has been provided.[6] The plaintiff, on the other hand, relies on the frequently cited and much discussed decisions in Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); and Fay v. Douds, 172 F.2d 720 (2d Cir., 1949).

On the one hand there can be no doubt that the Labor Management Relations Act of 1947 manifested a clear Congressional recognition that to achieve the statute's basic policy of promoting collective bargaining dilatory litigation had to be avoided; that a restriction of the scope and method of review of labor determinations tended to achieve this result; and that such restriction tended to promote the efficient functioning of the Board as well.[7] Thus, it has come to

4. Benz v. Compania Naviera Hidalgo, S.A., 353 U.S. 138, 77 S.Ct. 699, 1 L.Ed.2d 709 (1957); cf. Marine Cooks & Stewards v. Panama S.S. Co., 362 U.S. 365, 80 S.Ct. 779, 4 L.Ed.2d 797 (1960); Afran Transport Company v. National Maritime Union, D.C., 169 F.Supp. 416 (1958); Bobolakis v. Compania Panamena Maritima San Gerassimo, D.C., 168 F.Supp. 236, 238 (1958).

5. Article VI of the Constitution provides, in pertinent part, as follows:
"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; * * *."
Assuming there is a conflict between the Board's action, properly exercised pursuant to the Labor Management Relations Act of 1947,* and the Treaty of Friendship, Commerce, etc. between the United States and Honduras, dated December 7, 1927, 45 Stat. 2618 (1927), an interesting legal question is posed. It does not follow, however, that Congress' Constitutional powers are diminished by the prior treaty commitments of the United States. Since neither has intrinsic superiority over the other, the later Congressional enactment should prevail. *Leges posteriores priores contrarias abrogant.* See Edye v. Robertson

(Head Money Cases), 112 U.S. 580, 598–599, 5 S.Ct. 247, 28 L.Ed. 798 (1884); Taylor v. Morton, 23 Fed.Cas. 784, No. 13,799 (1855); cf. Cook v. United States, 288 U.S. 102, 53 S.Ct. 305, 77 L.Ed 641 (1933).

* (that is to say, any action not contrary to any express statutory command of the Act).

6. 49 Stat. 454 (1935) as amended, 29 U.S.C.A. § 160(e), (f) provides that "Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any circuit courts of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in." This is the only provision for judicial review in the Act. The procedure for review of certification proceedings is set forth in § 9(d) providing that whenever an order of the Board is made pursuant to an unfair labor practice hearing and there is a petition for enforcement or review of the order by the court of appeals, the Board's certification is to be included in the transcript, and the validity of the whole representation determination is then open to judicial examination.

7. See the Legislative History of the Labor Management Relations Act, 1947, (G.P.O. 1948), U.S.Code Cong.Service 1947, p. 1135; Leedom v. Kyne, 358 U.S. 184, 185, 191–194, 79 S.Ct. 180, 3 L.Ed.2d 210

be generally recognized that Board determinations in representation proceedings are not reviewable by district courts under their general equity jurisdiction.[8] But this generally settled rule is subject to two exceptions—those established by the two decisions upon which the plaintiff relies. The nature of these exceptions and their impact upon the general rule were succinctly explained by Judge Friendly in a recent opinion, Local 1545, United Brotherhood of Carpenters v. Vincent, 286 F.2d 127, 129–130 (2d Cir., 1960):

> "Subsequently, two exceptions to this general rule excluding District Court jurisdiction to enjoin Board directions in representation matters have been recognized. The first was this Court's decision in Fay v. Douds, 2 Cir., 1949, 172 F.2d 720, 723, relating to cases where the plaintiff advances a claim of denial of constitutional rights, in that case lack of procedural due process, which is 'not transparently frivolous.' Thereafter a second exception was announced, first by the Court of Appeals of the District of Columbia and later by the Supreme Court, in Leedom v. Kyne, 1957, 101 U.S. App.D.C. 398, 249 F.2d 490, 1958, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed. 2d 210, where the Board had acted in direct and in that case conceded contravention of a specific mandate of § 9, there § 9(b) (1)."

Since there is no claim here of the Board's violation of any statutory mandate, the Leedom v. Kyne exception does not apply. But there is present in this case the assertion of the deprivation of several Constitutional rights. Only one need be referred to since it is plainly one which is "not transparently frivolous."[9] It is urged not only by the plaintiff, but was also urged by the Attorney General of the United States when he intervened before the Board in these proceedings as amicus. At page 11 of his brief he stated:

> "A refusal to treat merchant vessels flying the flag of Liberia and Honduras as vessels of those nations would be in direct conflict with our treaty obligations and would, as the Under Secretary of State has pointed out in his letter of October 27, 1960, to the Attorney General, a copy of which is included as Appendix A, create serious difficulties in our foreign relations not only with nations signatory to these treaties but with other nations, such as Panama, which would be entitled to interpret a refusal to recognize the flag of the ship as a violation of the rules of international law upon which there had been mutual reliance."

Moreover, the Attorney General appended to his brief a communication from the Department of State signed by Under Secretary Douglas Dillon, dated October 27, 1960, expressing the Department's interest in these proceedings "based upon the important foreign relations considerations involved" and added, in part, as follows (p. 24 of Attorney General's brief):

> "The Department of State believes that a proper reading of these

(1958); American Federation of Labor v. National Labor Relations Board, 308 U.S. 401, 405–411, 60 S.Ct. 76, 84 L.Ed. 448 (1940); Fitzgerald v. Douds, 167 F. 2d 714, 716–717 (2d Cir., 1948).

8. Local 1545, etc. Carpenters v. Vincent, 286 F.2d 127 (2d Cir., 1960); McLeod v. Local 476, 288 F.2d 198 (2d Cir., 1961); Leedom v. International Brotherhood of Electrical Workers, 278 F.2d 237 (D.C.Cir., 1960); National Biscuit Division v. Leedom, 105 U.S.App.D.C. 117, 265 F.2d 101 (1959), cert. denied, 359 U.S. 1011, 79 S.Ct. 1151, 3 L.Ed.2d 1037 (1959).

9. This language is that of Judge Learned Hand, writing for the unanimous Court in Fay v. Douds, 172 F.2d 720, 723 (2d Cir. 1949):
> "If this assertion of constitutional right is not transparently frivolous, it gave the District Court jurisdiction; and, having once acquired jurisdiction, the court might, and should, dispose of all other questions which arose, even though they would not have been independently justiciable."

Treaties requires that vessels under the flag of Liberia and Honduras and carrying the papers required by the national laws of those countries in proof of nationality, be recognized by the United States Government or any agency thereof as having the nationality of those countries. Therefore, the Department considers that any action by the Board purporting to consider such vessels as United States flag vessels, would be subject to a charge of violation of the above international agreements."

I cannot go so far as to say that a treaty violation may occur. It would seem sufficient, on the jurisdictional aspect of this case, to point out the formal assertions of important officials of the executive branch of the Government which tend to substantiate the plaintiff's claim on this point. I conclude therefore that there is present in this case one of the two grounds set forth by Judge Friendly permitting the assertion of jurisdiction by the District Court.

### The Plaintiff's Entitlement to Injunctive Relief

 Assuming the valid assertion of jurisdiction by the District Court, I shall now deal with the considerations affecting the disposition of plaintiff's request that it be granted threshold injunctive relief. At the outset, I am not convinced of the probability of the plaintiff's success in sustaining the legal contentions in this case. I am constrained to note that although the Attorney General intervened before the Board, he has been silent before this Court. It may be, as the Board urges in its own behalf, that the Attorney General believes that resort to the Court is, in any event, premature because the election sought to be enjoined is an interlocutory step in a representation proceeding, and it may lead nowhere if neither union wins. It is only if one of the two unions on the ballot wins, and it is certified by the Board as the collective bargaining representative

that plaintiff will be placed under a legal obligation to bargain. And even in this contingency, the legal obligation is not enforceable until reviewed by the appropriate Court of Appeals as already stated. The plaintiff's assertions of immediate and irreparable damage by the holding of the election, without more, are unproved and unconvincing. It is not possible, on the record before me, to conclude that the plaintiff will suffer irreparable harm solely as a consequence of the holding of the election. I feel constrained to conclude that the interests of the many parties involved, particularly in the light of the lengthy and painstaking inquiry by the Board, do not justify the grant of the drastic threshold sanction invoked by the plaintiff.

Accordingly, the plaintiff's motion for a preliminary injunction is denied. It is so ordered.