MILK AND ICE CREAM DRIVERS AND DAIRY EMPLOYEES UNION, LOCAL 98, Affiliated With International Brotherhood of Teamsters, Appellant,

v.

Frank W. McCULLOCH, Chairman, National Labor Relations Board, et al., Appellees.

No. 16695.

United States Court of Appeals District of Columbia Circuit.

Argued April 5, 1962.

Decided May 31, 1962.

Mr. Herbert S. Thatcher, Washington, D. C., with whom Mr. James F. Carroll, Washington, D. C., was on the brief, for appellant.

Mr. Herman M. Levy, Atty., N. L. R. B., with whom Messrs. Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Allison W. Brown, Jr., Atty., N. L. R. B., were on the brief,

for appellee McCulloch and others. Messrs. Morton Namrow and James C. Paras, Attys., N. L. R. B., also entered appearances for appellee McCulloch and others.

Mr. William B. Devaney, Washington, D. C., entered an appearance for appellee Milk and Ice Cream Drivers and Dairy Employees Union of Greater Cincinnati and Vicinity.

Before FAHY, WASHINGTON and DAN-AHER, Circuit Judges.

FAHY, Circuit Judge.

Appellant union,[1] referred to as Local 98, filed suit in the District Court against the Chairman and members of the National Labor Relations Board, to enjoin the Board from holding a representation election among the employees of the dairy industry in the greater Cincinnati area. The District Court, Judge Holtzoff sitting, dismissed the complaint for lack of jurisdiction, followed by this appeal.

The complaint alleged that Local 98, as the representative of the employees referred to, on March 16, 1959, had entered into a collective bargaining agreement with the Greater Cincinnati Milk and Ice Cream Dealers Association, composed of some forty-one dairy employers. This agreement would not expire by its terms until March 19, 1962, prior to which, on the petition of the intervenor union,[2] which in the meantime claimed to have become the representative of the employees, the Board had directed the election. The complaint of Local 98 attacked this action of the Board as in excess of its authority and as a taking of its property without due process of law. It is claimed also that the Board's action was inconsistent with procedural due process in that, though permitted to intervene in the Board proceedings appellant was denied the right to present proof that there was an established practice in the industry to maintain three-year collective bargaining agreements, and, also, that it was precluded from introducing evidence in other respects to which we shall refer.

In directing the election notwithstanding the unexpired agreement the Board invoked what is known as its contract-bar rule, under which a uniform period of two years had been adopted by the Board "as the measure of the reasonable period during which a contract will bar a representation proceeding." Pacific Coast Ass'n of Pulp & Paper Mfrs., 121 N.L.R.B. 990, 992 (1958).

Local 98 can rely upon no provision of the National Labor Relations Act,[3] as amended, to support jurisdiction in the District Court to review a Board representation proceeding. The Supreme Court has said:

"In American Federation of Labor v. [National] Labor [Relations] Board, 308 U.S. 401, [60 S.Ct. 300, 84 L.Ed. 347], this Court held that a Board order in certification proceedings under § 9 is not 'a final order' and therefore is not subject to judicial review except as it may be drawn in question by a petition for enforcement or review of an order, made under § 10(c) of the Act, restraining an unfair labor practice. But the Court was at pains to point out in that case that '[t]he question [there presented was] distinct from * * * whether petitioners are precluded by the provisions of the Wagner Act from maintaining an independent suit in a district court to

1. Milk and Ice Cream Drivers and Dairy Employees Union, Local 98, Affiliated with International Brotherhood of Teamsters.

2. Milk and Ice Cream Drivers and Dairy Employees Union of Greater Cincinnati and Vicinity. To obviate possible confusion we explain that this union was the petitioner before the Board while Local 98, appellant herein, was intervenor. By

court order the Milk and Ice Cream Drivers and Dairy Employees Union of Greater Cincinnati and Vicinity was permitted to intervene in the District Court action instituted by Local 98.

3. 49 Stat. 449 (1935), as amended, 29 U.S.C. §§ 151–168 (1958), 29 U.S.C.A. §§ 151–168.

set aside the Board's action because contrary to the statute * * *.'"
Leedom v. Kyne, 358 U.S. 184, 187–188, 79 S.Ct. 180, 183, 3 L.Ed.2d 210.

The question respecting an independent suit, reserved in American Federation of Labor, was decided in Leedom v. Kyne, supra. The Court held that such a suit was available "to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act." 358 U.S. at 188, 79 S.Ct. at 184. As elsewhere expressed in the opinion, "where * * * Congress has given a 'right' * * * [there to professional employees] it must be held that it intended that right to be enforced * * *." This, the Court held, may be done under the general equity jurisdiction of a district court. 358 U.S. at 190–191, 79 S.Ct. at 184.

Our court has paraphrased the Supreme Court opinions bearing on District Court jurisdiction in a representation proceeding as requiring a showing of unlawful action by the Board, with resulting injury, by "departure from statutory requirements or from those of due process." Leedom v. International Broth. of Elec. Workers, 107 U.S.App.D.C. 357, 359; 278 F.2d 237, 239, quoting De Pratter v. Farmer, 98 U.S.App.D.C. 74, 76; 232 F. 2d 74, 76, in turn quoting Inland Empire Dist. Council v. Millis, 325 U.S. 697, 700, 65 S.Ct. 1316, 89 L.Ed. 1877. And see Boyles Galvanizing Co. v. Waers, 291 F.2d 791, 792 (10th Cir. 1961); McLeod v. Local 476, United Broth. of Indus. Workers, 288 F.2d 198, 201 (2d Cir. 1961); International Ass'n of Tool Craftsmen v. Leedom, 107 U.S.App.D.C. 268, 276 F.2d 514, cert. denied, 364 U.S. 815, 81 S.Ct. 45, 5 L.Ed.2d 46; Leedom v. Norwich, Connecticut Printing Specialities & Paper Prod. Union, 107 U.S.App.D.C. 170, 275 F.2d 628, cert. denied, 362 U.S. 969, 80 S.Ct. 955, 4 L.Ed.2d 900; National Biscuit Division v. Leedom, 105 U.S.App. D.C. 117, 265 F.2d 101, cert. denied, 359

U.S. 1011, 79 S.Ct. 1151, 3 L.Ed.2d 1037; Leedom v. Kyne, 101 U.S.App.D.C. 398, 249 F.2d 490, aff'd, 358 U.S. 184, 79 S. Ct. 180, 3 L.Ed.2d 210.

In seeking to bring its case within the above principles Local 98 relies upon no express statutory provision. The only statutory time limitation applicable to a section 9 proceeding is the prohibition in section 9(c) (3) [4] against holding an election when a valid one has been held within the preceding twelve months. Except for this the Board has a latitude insofar as the terms of the Act itself are concerned. Our question is whether, nevertheless, the direction of an election under the two-year contract-bar rule in the face of an unexpired agreement presents a substantial question of due process. Several decisions have upheld the validity of such action of the Board against such a contention, including our own decision in Leedom v. International Broth. of Elec. Workers, supra. And see McLeod v. Local 476, United Broth. of Indus. Workers, supra, 288 F.2d at 201; Local 1545, United Broth. of Carpenters & Joiners v. Vincent, 286 F.2d 127 (2d Cir. 1960). Cf. Empresa Hondurena De Vapores, S.A. v. McLeod, 200 F.Supp. 484, 486–87 (S.D.N.Y.1961); and compare Fay v. Douds, 172 F.2d 720 (2d Cir. 1949), where, however, no Board hearing whatever was held.

While it was early held in Labor Board cases, see Consolidated Edison Co. v. N. L. R. B., 305 U.S. 197, 235–239, 59 S.Ct. 206, 83 L.Ed. 126, that the Board must recognize the validity of contracts of an employer with an independent labor organization, the time within which an election might validly be held to determine whether the organization continued to represent the employees was not involved in those cases. Neither the Board nor the courts were there confronted with the responsibility of carrying out the policy of the Act to permit employees to make known by an election the choice of their representative.[5] Freedom to choose is a

---

4. 61 Stat. 143 (1947), as amended, 29 U.S.C. § 159(c) (3) (Supp. III, 1959–1961), 29 U.S.C.A. § 159(c) (3).

5. Section 7 of the Act sets forth this objective. It provides that "Employees shall have the right * * * to bargain

basic part of the legislative plan. Collective bargaining agreements, conducive to industrial peace and stability, are of course encouraged; but the Act contemplates that they shall be between management on the one hand and the freely chosen representative of the employees on the other. Agreements envisaged by the Act are not devoid of employee free choice, shells to endure indefinitely in frustration of the public policy effectuated through section 9 proceedings. Since the enactment of the Wagner Act in 1935 a labor contract has taken character from the several national Labor Acts, and is to a reasonable degree subject to, as well as a part of, the policy the Acts have expressed. Vital to this policy is the right of employees to make known this choice of representatives at reasonable intervals.

An election under the two-year contract-bar rule, of course, does not prohibit a contract for a term longer than two years. Insofar as here pertinent the rule means only that after two years the representative capacity of the organization which claims to be the representative of the employees may upon a sufficient showing be challenged in a section 9 proceeding. The proceeding may result in no change in representation; but if in fact the previous representative is found no longer to be the choice of the employees that fact may be revealed, with such legal consequence as may ensue. We think the rule which permits this in the present case is not so vulnerable in the context of the Act as to call upon the courts to review it under their equity jurisdiction.

■ Local 98, as we have indicated, also contends it was denied due process of law in the refusal of the Board to receive and consider competent and relevant evidence that there was a three-year contract practice in the industry prevalent in the Cincinnati area and in the milk industry generally. As to this the Board pointed out that "no compelling reasons have been advanced, giving due consideration to the

intervenor's [appellant's] contention with respect to the asserted practice of bargaining on basis of 3 year contracts, for reconsideration of the contract bar rule." Moreover, we think this contention in any event does not furnish a jurisdictional basis for District Court intervention. It amounts to saying that notwithstanding the validity of the two-year contract-bar rule in general, yet whenever in the face of an outstanding contract the Board acts within the terms of the rule a substantial constitutional question is raised. While no doubt the Board could receive evidence as to whether the rule should be applied in a particular case, it would deprive the Board of the right to establish the rule for generally uniform guidance if of necessity the Board must open for an evidentiary hearing, such as appellant here sought, each case where the contract has been entered into for more than two years, or where a contract term of more than two years has been the practice. It seems to us that this amounts to saying that due process of law does not permit the Board to establish a general rule on the subject, and this, as we have indicated, would be inconsistent with a fundamental purpose of the Act, namely, to permit employees to have a free choice of representatives in the interest of industrial peace to be achieved through collective bargaining. A stronger showing than here attempted would be necessary to confer jurisdiction on the District Court. The exclusion of the evidence Local 98 sought to introduce was not a denial of due process because the hearing of the character sought was not itself a requirement of due process.

■■ Denial of due process is also claimed in the rulings of the Board precluding the introduction of evidence as to the inclusion of unrepresented non-supervisory clerical employees in the collective bargaining unit, and as to the exclusion of other employees from the unit and from participating in the election because

collectively through representatives of their own choosing * * *." 49 Stat.

452 (1935), as amended, 29 U.S.C. § 157 (1958), 29 U.S.C.A. § 157.

they were supervisory employees.[6]  There is here no violation of any statutory or constitutional provision to support District Court jurisdiction.  For the same reason must fall the contention of Local 98 that the intervenor union [petitioner before the Board] was estopped from asserting that the existing contract did not bar the election because its officers had themselves negotiated the three-year agreement.  While this might be a consideration for the Board in determining whether or not to hold the election it furnishes no ground for the District Court to supervise the Board through the exercise of its general equity jurisdiction.

Affirmed.

---

6. In this regard, the Regional Director's Direction of Election expressly excluded all supervisors from the appropriate unit and from participating in the election. The Board's rules permitted Local 98 to challenge at the time of the election "the eligibility of any person to participate in the election." 29 C.F.R. § 102.69(a) (Supp.1962), 29 U.S.C.A.Appendix.