538

The AKRON & BARBERTON BELT
RAILROAD CO. et al., Plaintiffs,
v.
ORDER OF RAILWAY CONDUCTORS
AND BRAKEMEN et al.,
Defendants.

Civ. A. No. 142-66.

United States District Court
District of Columbia.

April 19, 1966.

Francis M. Shea, Richard T. Conway
and William Dempsey, Washington,
D. C., for plaintiffs.

Harry E. Wilmarth, Cedar Rapids,
Iowa, and James D. Hill, Washington,
D. C., for defendants.

HOLTZOFF, District Judge.

In this action a preliminary determination was had as to some of the basic questions of law in an opinion rendered by this Court on March 3rd, 250 F.Supp. 691. Then the issues as to all of the defendants except one were tried and determined by a subsequent opinion rendered by this Court on March 28th. The issues as to the defendant Order of Railway Conductors and Brakemen were severed by the Court on the application of the parties for separate disposition and they are before the Court at this time. The parties have in a very commendable manner stipulated all the facts. The Court adopts the stipulation of facts as its findings of fact and this opinion will constitute the conclusions of law.

There are two issues to be determined between the parties. During the effective period of Award 282 the defendant served certain notices under Section 6 of the Railway Labor Act, 45 U.S.C. § 156, proposing changes in what is called "crew consist" in the parlance of the railway industry or the size of train crews. The Court held in its opinion of March 28th, D.C., 252 F.Supp. 207 that while these notices were not nullities, they were prematurely served and did not become effective until the day after the termination of the effective period of Award 282. Immediately upon their becoming effective, it was the duty of both parties to proceed to conduct conferences, as provided in Section 6 of the Railway Labor Act, with the view to negotiating the dispute.

It appears in this case that conferences have been had prior to the termination of the effective period of the Award between the parties. These conferences, however, consisted of a statement on the part of the carriers to the effect that the notices were prematurely served and were otherwise outside of the scope of the Act and therefore there was no obligation to negotiate. To be sure, at these conferences representatives of the employees attempted to discuss the merits of the dispute. Into this discussion, however, the representatives of the carriers declined to enter.

The Court is of the opinion that this is not a conference of the type required by the Railway Labor Act. Conferences contemplated by the Act must involve negotiations concerning the merits of the dispute. There was no obligation to negotiate until after the termination of the effective period of the Award.

Under the Railway Labor Act, as it has been construed by the Supreme Court in Virginian Railway Co. v. System Federation No. 40, Railway Employees, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 in a unanimous opinion rendered by Mr. Justice Stone, to which this Court adverted at length in its opinion of March 3d, 250 F.Supp. 691, there is a binding obligation on the part of both parties to conduct negotiations in good faith pursuant to notices served under Section 6 of the Railway Labor Act. The Supreme Court made it clear that the provision for negotiations was not merely an expression of a pious wish, was not hortatory, but was a command. At page 545. 57 S.Ct. at page 598 the Court stated:

> "It is, we think, not open to doubt that Congress intended that this requirement be mandatory upon the railroad employer, and that its command, in a proper case, be enforced by the courts."

In that case it was the carrier who refused to negotiate, but the obligation is equally binding on both sides. At page 548, 57 S.Ct. at page 599 Mr. Justice Stone states:

> "The statute does not undertake to compel agreement between the employer and employees, but it does command those preliminary steps without which no agreement can be reached. It at least requires the employer to meet and confer with the authorized representative of its employees, to listen to their complaints, to make reasonable effort to compose differences —in short, to enter into a negotiation

for the settlement of labor disputes * * *."

Reciprocally, there is an obligation on the part of the representatives of employees to meet and confer with authorized representatives of the employers and to make reasonable efforts to compose differences. This requirement is not fulfilled by a meeting at which one side denies the obligation to negotiate. There must be a *bona fide* actual negotiation, and the courts will, by appropriate decrees, require negotiations.

■ Accordingly, the Court rules that it is the duty of both sides, through their representatives, to meet, confer and negotiate for the purpose of endeavoring to reach an agreement, if possible, and that such negotiations are the first step to be taken under the procedure prescribed by the Railway Labor Act. The Court further holds that the meetings held at which one side declined to negotiate the merits of the dispute because it was under no obligation to do so, is not sufficient compliance with the Act. This discussion disposes of the first issue to be determined at this hearing.

■ The second and final issue is whether either party may, prior to the termination of the negotiations, apply to the National Mediation Board for their services. That question too is governed by Section 6 of the Railway Labor Act. It provides, in effect, that after the service of notices under Section 6 conferences are to be held between the parties and also that application may be made to the National Mediation Board for its services. Section 155 of Title 45, being Section 5 of the Railway Labor Act, provides that either employees or a carrier may invoke the services of the Mediation Board in connection with a dispute concerning changes in rates of pay, rules, or working conditions not adjusted by the parties in conference. In other words, it is contemplated that conferences should take place first and an attempt should be made to reach an adjustment.

■ Whether conferences must be exhausted or whether in the course of the conferences application may be made to the Mediation Board is a matter concerning which the statute seems to be silent. It seems to the Court that it is the National Mediation Board that must first exercise its discretion in determining at what point in the negotiations it will accept an offer or comply with a request for its services. Whether it should wait until all of the negotiations are exhausted or whether it should step in during the progress of the negotiations if requested, it seems to the Court is a matter for the discretion of the National Mediation Board.

■ The Court has in mind the general basic principle that the judiciary will not interfere with proceedings pending in administrative agencies until after the proceeding has terminated. In this connection the Court refers to its decision in Southern Pacific Co. v. National Mediation Board, D.C., 223 F.Supp. 951, and International Brotherhood of Teamsters, etc. v. Brotherhood of Railway Steamship Clerks, D.C., 245 F.Supp. 835, which was affirmed by the Court of Appeals on March 22d, 358 F.2d 540 of this year. In other words, the Court reaches the conclusion that it is not for this Court to determine at what point the National Mediation Board may step into the dispute, whether during the progress of the negotiations or only after the negotiations are completed. That is a matter for the National Mediation Board. The Court does reach the conclusion, however, that recourse to the National Mediation Board may be had only after notices under Section 6 become effective, which in this case was the day after the termination of the effective period of the Award.

■ In conclusion the Court wants to state emphatically that under the Railway Labor Act there may be no recourse to self-help until each of the procedural steps provided by the statute are exhausted successively. Conferences and mediation are only the first two steps. There are others prescribed.

Counsel may submit a proposed judgment embodying these two rulings.